GEORGE ELSASS *et al.*, Respondents, v. HENRY F. HARRINGTON, Appellant.

*St. Louis Court of Appeals, December 20, 1887.*

1. FRAUDULENT PURCHASE—INTENT NOT TO PAY.—A vendee's knowledge, when purchasing goods on a credit, that he will not be able to pay for them, is tantamount to an *intent not to pay* for them.

2. FALSE REPRESENTATIONS—WHEN INADMISSIBLE—OTHER ACTS OF PURCHASER.—Misrepresentations by an intending purchaser of goods, as to his financial condition, are not admissible in evidence, when not shown to have been communicated to the seller. But previous, contemporaneous, or subsequent acts of the purchaser, having a natural tendency to explain his motives in the purchase, may be inquired into. *Manheimer v. Harrington*, 20 Mo. App. 301, re-affirmed. (THOMPSON, J., holds the misrepresentations admissible in this case, as tending to show the purchaser's preparation for the commission of a fraud).

3. DEPOSITION OFFERED TO SHOW ADMISSIONS—WHEN INADMISSIBLE. A deposition given by a person in another cause, after he has confessed judgment in favor of creditors, cannot be used to prove admissions by him prejudicial to rights claimed under the judgments.

APPEAL from the St. Louis Circuit Court, HON. SHEPARD BARCLAY, Judge.

*Reversed and remanded.*

TAYLOR & POLLARD, for the appellant: The court erred in allowing Blackman's deposition to be read in evidence. *Borders v. Barber*, 81 Mo. 644; *Parsons v. Parsons*, 45 Mo. 267; *Fongue v. Burgess*, 71 Mo. 389; *Eitlegeorge v. Building Ass'n*, 69 Mo. 56; *Howell's Ex'r v. Howell*, 37 Mo. 126; *Worley v. Watson*, 22 Mo. App. 547; *Albert v. Besel*, 88 Mo. 154; *Weinrich v. Porter*, 47 Mo. 283; *Gordon v. Ritenour*, 87 Mo. 59; 1 Greenl. Evid., secs. 180-181. A commercial agency report is not competent evidence, unless it was a material inducement to the making of the contract sought to be rescinded. *Holmes v. Harrington*, 20 Mo. App. 669; *Pulford v. Richards*, 22 L. J. Ch. 559. The court erred in the giving and refusing of instructions. *Thomas v. Freligh*, 9 Mo. App. 154; *Manheimer v. Harrington*, 20 Mo. App. 301. Admissions made by the debtor, after levy by the sheriff, are incompetent, because the sheriff's holding is not in the interest of, but adverse to, the debtor. *Nasse v. Algermissen*, 25 Mo. App. 189.

RUFUS J. DELANO, for the respondents: The depositions of a party to a cause may be read in evidence against him in another cause as an admission, but it cannot be read in the cause in which it is taken. *Priest v. Way*, 87 Mo. 28; *Singer v. Goldenburg*, 17 Mo. App. 549. Where fraud is the subject of the enquiry, the evidence should take a wide range, and the other transactions of the party accused of the fraudulent intent, not only contemporaneous with, but previous and subsequent to it, should be gone into. *Manheimer v. Harrington*, 20 Mo. App. 301-2. Even were the depositions of Blackman improperly allowed as his admissions, that error was entirely cured by defendant's attorney introducing him as a witness for the defence; the same material facts were brought out by him and presented to the jury, and Blackman further admitted that everything sworn to in the depositions by him was true. The effect of the admissions was, therefore, negatived. *Bradford v.*

*Pearson*, 12 Mo. 71; *Blackwell v. Bailey*, 1 Mo. App. 328; *Haskings v. Railroad*, 58 Mo. 305; *McGonigle v. Daugherty*, 71 Mo. 259. The court specially and fully instructed the jury that there was no commercial report, etc., to be relied upon by respondent.

THOMPSON, J., delivered the opinion of the court.

This was an action of replevin, to recover certain merchandise which the plaintiffs sold to George Blackman, doing business at St. Louis under the style of George Blackman & Company. The ground of the action is, that Blackman purchased the goods from the plaintiffs, not intending to pay for them. It appeared in evidence that Blackman never had any transactions with the plaintiffs except the single one in question, although the plaintiffs sent their trade circulars to him, as they did to other persons known to be engaged in the leather trade. In October, 1886, they sent one of their circulars to Blackman, quoting the prices of certain stock, and he, in response thereto, on the twenty-third of October, wrote them a letter to ship him certain goods, described and priced therein. This they did on the thirty-first of October. The goods arrived at St. Louis and were received by Blackman early in November. On the twenty-fourth of November Blackman made three confessions of judgment, amounting in the aggregate to $4,281.90. The first was to Samuel A. Coale, Jr., and Charles Willemsen, to indemnify them as sureties on his bond as assignee of an insolvent's estate, in the sum of $2,281.90, for moneys belonging to the said estate which he had misappropriated by using in his business; the second in favor of Samuel A. Coale, Jr., and William M. Horton, in the sum of one thousand dollars, to indemnify them against their contingent liability as his accommodation endorsers on a certain promissory note; and the third to Samuel A. Coale, Jr., and Anthony Kessler, in the sum of one thousand dollars, to indemnify them as his endorsers on another promissory note. The *bona fides* of these confessions

of judgment is not assailed, and the record affords no
ground for characterizing them as other than confessions
of judgment made by an insolvent in the exercise of his
lawful right to prefer certain of his creditors. They
were thus treated in the course of the trial.

Under these confessions of judgment, the sheriff
levied executions upon the property of Blackman, in-
cluding the goods which the plaintiffs had shipped to
him but a short time previous, as above stated, and
which had not been paid for. The substantial question
at issue was, whether, at the time when Blackman
ordered the goods from the plaintiffs, he did not intend
to pay for them. We may say, in passing, that in cases
of this kind, the intent of the purchaser of the goods
is a fact which seldom appears in any distinct declara-
tions made by him, but which is necessarily to be
gathered by the jury from all the circumstances in the
case. As there was evidence in this case that, at the
time when Blackman ordered these goods, he was hope-
lessly insolvent; that his business had been steadily
declining ; that his available assets represented scarcely
more than one-fourth of his liabilities ; that among
these liabilities was the obligation to pay $2,281.90, be-
longing to a trust fund which he had misappropriated
by using it in his business; that he had never previously
had any dealings with these plaintiffs ; and that he had
made these confessions of judgment very soon after
receiving the single invoice of goods which he purchased
of them ; it became a question for the jury whether or
not, in these circumstances, he could have intended to
pay for the goods when he thus ordered them. The
mere fact that the purchaser is insolvent at the time
when he orders goods which are sold to him on credit
does not, of course, entitle the vendor to rescind the
sale. The purchaser must intend never to pay for them ;
and while many insolvent merchants take more hopeful
views of their future than events justify, yet, where a
merchant makes purchases shortly before failure, and at
a time when his business is hopelessly swamped, it must,

we think, be left to a jury, in an action of this kind, to say whether he intended ever to pay for the goods. A knowledge on the part of a purchaser, at the time of making the purchase, that he will not be able to pay for the goods is tantamount to an intent not to pay for them. We, therefore, think that no error was committed in submitting this case to the jury.

We shall lay out of view the objections which have been made to the giving and refusing of instructions, with the observation that the instructions given and refused have been carefully looked to, and that the case seems to have been put to the jury upon the proper applicatory principles of law, and by instructions which were sufficiently explicit. Some of the instructions which were tendered by the defendant and refused might have been given without error; but, as the jury had been sufficiently instructed, it was not error to refuse them.

In the course of the trial, a witness named Hulse was allowed to testify to certain statements which Blackman had made to him in August, 1886, touching his financial condition, Hulse being a reporter for the mercantile agency of R. G. Dun & Company, and Blackman knowing that the information communicated to that agency would be used by them in giving him what is called a commercial rating, and would be communicated by them to their correspondents, from whom he, Blackman, might desire credit. This testimony seems to have been admitted with the view that it would be followed up by showing that the plaintiffs had received, through R. G. Dun & Company, information of the statements which Hulse testified that Blackman made to him. But this was not done, and the court very properly gave a cautionary instruction to the jury, to the effect that there was no evidence tending to show that any alleged statements made by Blackman to Hulse were communicated to or relied upon by the plaintiffs in making the sale to Blackman, and that the jury could not properly find that the plaintiffs had established any fraud in the

sale by reason of any misrepresentations of his financial condition by Blackman to Hulse. A majority of the court are of opinion that this instruction was not broad enough, that the jury should have been admonished to disregard the testimony of Hulse entirely, and that on another trial it should be excluded. We said, in a recent case of this kind, as we have frequently taken occasion to say in other cases, where the question of fraudulent intent in making purchases of goods or conveyances of property was involved, that the evidence ought to be allowed to take a wide range, and that other transactions of the party accused of the fraudulent intent, not only contemporaneous with the transaction in controversy, but previous and subsequent to it, which have a natural tendency to explain the motives with which it may have been effected, and which are not too remote and conjectural, should be gone into. *Manheimer v. Harrington*, 20 Mo. App. 301. All the members of the court wish to be understood as re-affirming this principle ; but a majority of the court are of opinion that it does not extend so far as to admit the testimony of Hulse for any purpose in this case, in the absence of evidence tending to show that the information which he alleges that Blackman communicated to him respecting Blackman's financial condition had been communicated to the plaintiffs prior to the sale of the goods in controversy, on the ground that it was too remote, and that it is not competent thus to prove one fraud by proving the commission of another fraud. I feel inclined to hold that this evidence was admissible, as tending to show preparation on the part of Blackman to secure false credits, and as bearing upon the intent with which he may have made the subsequent purchase of the plaintiffs, on a principle similar to that which, on the trial of an indictment for uttering counterfeit money, admits evidence of attempts to utter such money to other persons than ·the prosecuting witness. But the conclusion of the court is as above stated. It is just to

Mr. Blackman to add that, when testifying as a witness, he denied *in toto* the making of the statements which were testified to by Hulse.

This brings us to the last substantial question in the case. Against the objection of the defendant the court allowed the plaintiffs to read in evidence a deposition of Mr. Blackman which had been taken subsequently to these confessions of judgment, in a case entitled *Greiss v. Blackman*, in which case none of the parties to this record were parties. The deposition was not offered as a deposition, and it is not claimed, and could not be, that it was admissible as a deposition; but it was offered as an admission of Blackman against his interest. Clearly it was not competent as an admission. It is a well-established rule of evidence that the declarations or admissions of a party, made after parting with his interest in property, are not admissible for the purpose of affecting the rights of those to whom his interest has been transferred. As to such persons he becomes a mere stranger, and his declarations are hearsay evidence only. *Ringo v. Richardson*, 53 Mo. 385; *Exchange Bank v. Russell*, 50 Mo. 531; *Albert v. Besel*, 88 Mo. 150; *Worley ex rel. v. Watson*, 22 Mo. App. 546; *Gordon v. Ritenour*, 87 Mo. 54, 59; *Wenrich v. Porter*, 47 Mo. 293; *Enders v. Richards*, 33 Mo. 598; *Stewart v. Thomas*, 35 Mo. 207. Upon the same principle the declarations of a person, upon whose life a policy of insurance has been issued for the benefit of another, made subsequently to the issuing of the policy, are not admissible for the purpose of avoiding the policy and thus affecting the rights of the beneficiary. *Reid v. Ins. Co.*, 58 Mo. 421; *Evers v. Life Association*, 59 Mo. 429. This principle required the exclusion of Blackman's deposition. Blackman's confessions of judgment were merely a mode of appropriating all or a part of his property to the payment or indemnification of certain of his creditors whom he desired to prefer. These creditors, though not parties to this record, stand behind the sheriff as the

real parties in interest in this case. On no principle known to the rules of evidence could the admissions made by Blackman, after having made this appropriation of his property in their favor, be given in evidence to affect injuriously their rights in respect of such property.

Nor can we say that the matter contained in this deposition was not prejudicial. It was a very long deposition, and in it an able lawyer had examined Blackman with great thoroughness touching his financial condition, the state of his business and the manner of keeping his books prior to his failure. Nor are we able to say that the facts brought out upon the testimony of Blackman, as a witness at the trial, covered the same grounds so as to cure the prejudice of admitting this deposition.

For this error only the judgment will be reversed and the cause remanded. It is so ordered. All the judges concur.